## FROST vs. PAINE *Ex'r.*

A. B. C. and D. having levied executions on the same tract, — the two first on the property as belonging to J. L. — the third, as the property of *J. L., Jr.* — and the last, as the property of both the *L's,* agreed that D. should bring a suit in his own name for the joint benefit of all, to obtain possession; which was done. Afterward D. gave to the others a writing under his hand, reciting these facts, and adding the order in which the claims were "to be paid and satisfied from the funds arising from the sale of said farm (said sale to take place as soon as possible,") the claim of D. being placed in the first class:

*Held,* that, by the contract, the duty of making the sale and distributing the proceeds was assumed by D :

That, there was a *sufficient legal consideration* for this promise :

That, no conveyance was necessary from A. and others to enable D. to perform his contract :

That, two and a half years was such an unreasonable delay on the part of D. to make sale of the property as to render him liable to the action of A. and others :

That the interest of A. B. and C. was *several,* and that they need not *join* in an action against D :

That, the agreement between the parties did not constitute *champerty.*

A mistake in the officer's return upon a writ, of *the name* of the defendant, was holden not to impair the validity of an attachment, the property attached being easily designated after *striking out* the name.

This was an action of *assumpsit,* founded upon the special agreement of the defendant's testator, *Ichabod Butler,* made with the plaintiff and two others. The writ was dated *January* 4th, 1833. The contract was as follows :

"Whereas, I the subscriber, at the Supreme Judicial Court,
"which was holden at *Alfred* within and for the county of *York*
"on the third Tuesday of *September,* 1829, recovered judgment
"for possession, against *Ichabod Lord* and *Ichabod Lord, Jr.,* of
"*Shapleigh,* for the farm on which they then lived and occupied,
"containing about sixty acres, and whereas my suit was prosecut-
"ed against the said *Lords* for the benefit of myself, *Robert*
"*Fernald* and *John Frost* of *Kennebunk,* and *John Powers,* who
"claims a judgment against said *Ichabod Lord,* recovered by
"*Samuel Curtis* of *Wells,* whereon execution has been sued
"out and extended on said farm : Now be it known, that it was
"agreed, and I hereby confirm said agreement, that the respective

" claims of myself, *Fernald*, *Frost* and *Powers*, including all " costs, are to be paid and satisfied from the funds arising from the " sale of said farm (said sale to take place as soon as possible,) " in manner following, to wit : — First, my claim, said *Fernald's* " claim and said *Frost's* claim, including all my costs, are to be " paid. Secondly, the surplus is to be paid to *John Powers* to " satisfy the claim of said *Curtis*, either in whole or in part. And " should said surplus exceed said claim, in the name of said *Cur-* " *tis*, the balance to be paid equally between myself, said *Fer-* " *nald*, *Frost* and *Powers*.

" My claim is against *Ichabod Lord* and *Ichabod Lord, Jr.* — " *Robert Fernald's* claim is against *Ichabod Lord, Jr.* — *John* " *Frost's* claim is against *Ichabod Lord* — *John Powers'* is " against the same. *Ichabod Butler.*

" *May* 14*th*, 1830."

It was agreed, that on the 12*th* of *May*, 1823, *Ichabod Lord* was owner of the farm mentioned in said contract, and on that day conveyed it to his son, *Ichabod Lord, Jr.*

On the 3*d* of *October*, 1826, the plaintiff caused said property to be attached as the property of *Ichabod Lord*, and on the 15*th* of *November*, 1826, extended his execution on twenty acres, part of said tract.

On the 27*th* of *June*, 1827, *Samuel Curtis* extended an execution on all the residue of said tract, as the property of *Ichabod Lord.*

*February* 17*th*, 1827, said *Fernald* caused said property to be attached, and on the 16*th* of *November* following, extended his execution on the whole of said tract, as the property of *Ichabod Lord, Jr.*

On the same 17*th* of *February*, said *Butler*, the defendant's testator, sued out a writ against both the *Lords*, on which the officer made the following return, viz.: " *By* virtue of this writ I have attached all the right, title and interest, the within named *Frosts* have in and to the farm on which they now live, situate in *Shapleigh*, containing about 100 acres, and on the 19*th* of *April*, gave each of them a summons in hand."

The plaintiff recovered judgment in this suit, and levied his execution, *November* 16*th*, on the whole tract, as the joint property of the two *Lords*.

Frost *v.* Paine Ex'r.

*Butler* acted as the attorney of *Fernald, Frost,* and *Curtis,* in obtaining judgment and making the levies, receiving seisin and possession for them.

In *May,* 1831, *Fernald* entered into possession of the farm, and still continues to occupy it.

In *October,* 1832, the plaintiff requested *Butler* to sell the land according to his agreement, who replied, that he could have sold it for $1000, but that he was too sick to attend to it. And it appeared, that he continued too sick to attend to business from the time of the above request to the time of his death, which was in *April* following.

The land was agreed to be worth about $800.

| | | | | |
|---|---|---|---|---|
| *Fernald's* levy was for | - | - | $76,60. |
| *Frost's* " for | - | - | 80,28. |
| *Butler's* " for | - | - | 58,09. |
| *Curtis'* " for | - | - | 223,57. |

A default was entered by consent, which was to stand, and the defendant to be heard in damages, if, in the opinion of the Court, the action was maintainable. Otherwise the default was to be taken off, and a nonsuit entered.

*Burleigh,* for the defendant, contended that the terms of the contract imposed no duty on *Butler,* other than what was imposed upon the others. It is agreed, that the land is to be sold as soon as possible — but it is not said *by whom.* *Butler* would have as good right to call upon either of the others to make sale, as they upon him. If *Butler* was to sell, the other parties would have put it in his power to make the sale, by releasing to him, which they did not do. They now retain all the title they ever had, never having transferred it. So that if *Butler* was to act as the agent of the others and make the sale of the property, he could not do it, without their aid, and not having rendered that aid, they have now no just cause of complaint.

Again, *Butler* had no power to convey, because he acquired no title by his levy. His attachment was of all the property that the " *Frosts,*" and not the *Lords,* had in the farm. He, therefore, took nothing by his levy as against *Fernald* — and consequently had nothing which he could convey.

2. If the contract should be so construed that *Butler* was bound to sell the property and divide the proceeds, it is then contended that the promise was to the other three *jointly*, and that the action should have been in their joint names: *Gilman* v. *Webber*, 12 *Pick.* 120.

3. There is no sufficient consideration for the agreement, if one was made. The suit was prosecuted for the benefit of the other parties — but surely that would constitute no consideration for any thing further that *Butler* should promise to do. *Shiels* v. *Blackburn*, 1 *H. Black.* 158; *Newland* v. *Ward.* 6 *Johns.* 194; 4 *Johns.* 235; *Wilbur* v. *How*, 8 *Johns.* 346; 7 *Term Rep.* 346, *note;* 1 *Com. on Con.* 16.

The land was conveyed in 1822, by *Ichabod Lord* to *Ichabod Lord, Jr. Frost*, therefore, acquired no title by his levy.

4. The agreement constitutes *champerty*, and therefore no action can be maintained on it. *Hawk. Pl. Cr.* 545; *Com. Dig. Tit. Maintenance;* 1 *Com. on Con.* 33.

*J. and E. Shepley*, for the plaintiff, to the point that the consideration was sufficient, cited *Davenport* v. *Mason*, 15 *Mass.* 94.

That no conveyance was necessary from *Frost* to *Butler*, to enable him to execute the contract, and that *Frost* would be *estopped* by the agreement, they cited *Com. Dig. Tit. Estoppel; Co. Litt.* 352, *a.; Cutler* v. *Dickinson*, 8 *Pick.* 386; *Lent & al.* v. *Padelford*, 10 *Mass.* 230; *Barnard* v. *Pope*, 14 *Mass.* 434.

That *Butler's* attachment was sufficient, notwithstanding the mistake of the officer, they cited *Bacon* v. *Leonard*, 4 *Pick.* 277.

WESTON C. J. delivered the opinion of the Court.

The first inquiry is, as to the true construction of the agreement, signed by the defendant's testator in *May*, 1830. There is great want of precision in its terms; but the defendant, as the representative of the testator, is bound by any lawful contract made by him, which can fairly be deduced from it. The agreement provides for the distribution of the funds, arising from the sale of the farm, which once belonged to *Ichabod Lord.* It is sufficiently clear that it was agreed to be sold. Did the testator

agree to sell it? It appears to us, that the instrument by him is to be so understood. The plaintiff, and *Powers* in the right of *Curtis,* had levied upon the land as the property of *Ichabod Lord; Robert Fernald* had levied upon part of it as the property of *Lord, Jr.* but the testator, having obtained judgment and execution against both the *Lords,* had levied upon the whole land as their property. Neither of the *Lords* could defend against the testator; but all the other levying creditors might be embarrassed by conflicting and opposing claims. The value of the farm was amply sufficient to satisfy all their demands, if they could agree, as it appears they did, to proceed in concert. Their first object was, to dispossess the *Lords.* To effect this, they put forward the testator, who, for their common benefit, obtained judgment for possession against them, in *September,* 1829. He thus acquired actual seisin of the land, which gave him a lawful right to sell and convey it; and he could pass a title, which neither of the judgment debtors could disturb. He appears to have been the party, through whom the others agreed to act. The plaintiff must have taken the agreement, signed by the testator, as evidence that he was to make the sale, and distribute the proceeds, in the manner therein stipulated.

The interest of the other parties, named in the agreement, was several. They were to receive the amount of their respective claims, if the fund proved sufficient, and if it did not, the agreement provided for a certain order of distribution, and if there was any surplus, it was to be equally divided. The agreement of the testator must then be taken distributively, as both promises and covenants must be, where the interest is several, and such is the intention of the parties.

It is contended, that the testator was not bound, because there was no consideration moving from the plaintiff. But the agreement that the testator should prosecute his action against the *Lords,* for the benefit of all, carried with it a right on his part, to call upon each to contribute to the expense; and the co-operation of the plaintiff, and his forbearing to assert his rights, or to bring them in conflict with the testator, together with the plaintiff's agreement that the land should be sold, and that in dividing the proceeds, the testator's claim should be placed in the first class,

which is set forth in the instrument, constituted in our opinion a sufficient legal consideration to support the promise, upon which the plaintiff relies.

It is further insisted, that the testator acquired nothing by his levy, and therefore had nothing to sell. This objection arises from the return of the officer, who served the writ and made the attachment in the original suit brought by him. In the return, the *Frosts* are named. No persons of that name are to be found in the process. The word *Frosts* is perfectly unmeaning, and manifestly slipped in by mistake. *Utile, per inutile, non vitiatur.* By overlooking that word, or striking it out, the property attached cannot be misunderstood. It never ought to be suffered to impair the validity of the attachment; certainly not at the instance of any of the parties to the agreement, who acquiesced in the title of the testator, and made use of it for their common benefit.

A further point taken for the defendant, is, that the testator was not bound to sell, until the other parties put him in a condition to pass an indefeasible title, by releasing their interest to him. Such a course was doubtless necessary to satisfy a prudent purchaser: and should have been provided for in the agreement. That instrument is very loosely drawn, and apparently upon little advisement. Possibly the parties might think that the testator, having obtained judgment for the land, and having taken possession, and proceeding also as he did for their benefit, it was not essential for them to convey to him, or to join in any other assurance. Be that as it may, the testator stipulated to sell, without imposing any condition upon the other parties. If it was an improvident contract, or one not well adapted to effect the purposes contemplated, we must take it as made by the parties, and are not at liberty to interpose terms, which, in our judgment, would render it less exceptionable.

If the testator was to sell, it was to be done as soon as possible; and we hold it to be very clear, that his omission to do so, from *May,* 1830, to *January,* 1833, when this action was instituted, was a violation of his promise; especially as performance was in the mean time demanded by the plaintiff.

As to the objection of maintenance, it does not apply to this

case. The parties all of them had an interest in the subject matter of the agreement. They were seeking payment of their honest debts. The property, upon which they had levied, was sufficient to pay them, if they could act in concert ; and we perceive nothing unlawful in the measures they adopted.

There having been a violation of this agreement on the part of the testator, the default is to stand. In regard to damages, they may turn out upon inquiry to have been merely nominal. No sale has been made. The deceased had received no money to the use of the plaintiff. His title to the land, whatever it is, remains unimpaired. As neither he, nor the other parties, invested the deceased with lawful authority to sell their interest, if he had sold, a purchaser might have been unwilling to have given more than his interest alone was fairly worth. For, although it has been contended, that if the deceased had sold at their instance, and for their benefit, they could not have been permitted to have set up their title against a purchaser ; yet no one could have been expected to give much for an interest, subject to litigation upon this point. It may, therefore, be thought that the plaintiff's situation would not have been much improved, if the testator had sold ; and these are circumstances, to be considered, in estimating the amount of damages.